IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| GREG and HOPE KILGORE,<br><br>Plaintiffs<br><br>VS.<br><br>ACADEMY LTD,<br><br>Defendant | CIVIL ACTION NO. _____ |

## COMPLAINT

COME NOW Greg and Hope Kilgore and file their *Complaint* and in support thereof show the following:

1.

Academy Ltd is a Texas Limited Partnership doing business in the State of Georgia. It maybe served upon its registered agent CT Corporation System, 1201 Peachtree Street, N.E., Atlanta, Georgia 30361. Academy, Ltd.'s general partner is Academy Managing Co., LLC, located in Katy, Texas. That entity is a Texas Limited liability corporation with its principal place of business in Texas. Academy Ltd.'s sole limited partner is Associated Investors, Inc. of Las Vegas, Nevada, a Nevada Corporation with its principal place of business in Nevada.

2.

At all relevant times, plaintiffs have been and are presently citizens of the State of Georgia and are domiciled here.

−1−

3.

Plaintiffs seek to recover an amount in excess of the $75,000.00 necessary to create diversity jurisdiction. Further, as described above, the parties are diverse. Therefore, there is diversity of citizenship jurisdiction in this Court.  28 U.S.C. § 1332.

4.

Venue is proper because all of the events at issue occurred in the Middle District of Georgia; plaintiffs reside in Jones County in the Middle District of Georgia; and defendant operates numerous stores and operations in the Middle District of Georgia, including Macon, Georgia.

5.

At all relevant times, Academy Ltd. owned and operated an Academy Sports and Outdoors store in Macon Georgia.

6.

Defendant was a merchant with respect to hunting equipment, including climbing sticks for climbing into and descending out of deer stands.

7.

In the fall of 2010, Greg Kilgore purchased a "Game Winner Climbing Stick" from the Academy Sports and Outdoor store in Macon, Georgia owned and operated by the defendant.

8.

Under Georgia law, at the time of the sale, defendant warranted to Mr. Kilgore that the climbing stick was merchantable, meaning, that it was fit for the ordinary purposes for which a climbing stick is used, to wit, safely climbing into and descending from deer stands in

trees.

9.

Further, defendant had reason to know at the time of the sale of the product that Mr. Kilgore would use it to climb and descend trees for reaching deer stands and thus defendant warranted that the climbing stick was fit for this particular purpose.

10.

However, unknown to plaintiffs and invisible to ordinary observation, the strap which defendant sold was composed of polypropylene and "junk polyethylene." Polypropylene is an extremely poor material for a ratchet strap for use on a tree, because a trees bark will rapidly degrade it (external abrasion). Polypropylene is weak in static breaking strength and is even poorer under dynamic load conditions such as a person climbing or descending a ladder. Further, the use polyethylene in the strap makes it even weaker in strength and weaker in both external and internal abrasion resistance. Internal abrasion produces heat and melting, and weakens the strap from within. The polyethylene was probably introduced in the product as a recycled regrind. Thus, the climbing stick was neither merchantable, nor fit for the particular purpose as warranted by defendant at the time of sale.

11.

Defendant made or gave no warning of these properties of the climbing stick straps or indicated that a purchaser was not to place the climbing stick on any particular types of tree.

12.

Mr. Kilgore's employment requires that he climb telephone poles on a regular basis. He understands and practices safe climbing. He weighs approximately 180 pounds. Thus,

he is well within weight and strength limits for the climbing stick and its straps as advertised.

13.

Mr. Kilgore used the climbing stick successfully in deer hunting in 2010. After the 2010 season, he removed the climbing stick from the outside environment and placed it in a safe, dry, weatherproof environment at his home for storage. There were no visual indications of any problems with the climbing stick or its straps.

14.

Mr. Kilgore did not use the climbing stick during 2011 because the locations he hunted that year did not require it. The climbing stick remained in storage.

15.

In 2012, Mr. Kilgore again placed the climbing stick upon a tree for the purpose of climbing into and descending from a deer stand. He inspected the climbing stick, and it appeared perfectly safe. Mr. Kilgore successfully used the climbing stick during the 2012 hunting season prior to November 26, 2012.

16.

On the morning of November 26, 2012, Mr. Kilgore climbed the climbing stick to hunt. He observed the climbing stick and its straps that morning. There were no signs of wear, tear, stress, or injury to the straps.

17.

After several hours in the deer stand, Mr. Kilgore exited the stand and mounted the climbing stick to descend. Suddenly and without warning, the top support strap for the climbing stick split, releasing the climbing stick from the tree, and causing Mr. Kilgore to fall approximately twenty feet. There was no apparent problem with the support strap prior to when

it split. In fact, other than the split, the strap still appears practically new.

18.

Mr. Kilgore could not get up. He lay in the woods for several hours until help arrived. Mr. Kilgore broke the talus bone in his right foot as a result of the fall. A talus fracture is a difficult break because of its location, its weight bearing nature, and the lack of blood flow to this bone. Mr. Kilgore has incurred medical expenses in excess of $5,700.00 and was out of work from the November 26, 2012 until June 2013. He has lost income in excess of $30,000.00.

19.

Mr. Kilgore has had significant pain and suffering related to this accident and this painful and difficult injury. He continues to have significant problems and pain. Recovery is ongoing.

20.

Mr. Kilgore also suffered from a preexisting condition which has been greatly exacerbated by this accident.

21.

Pursuant to Georgia law, Academy, Ltd. is liable for breaches of the implied warranty of merchantability, O.C.G.A. § 11-2-314, and the warranty of fitness for a particular purpose. O.C.G.A. § 11-2-315.

22.

Under the UCC, Mr. Kilgore is entitled to recover consequential damages as a buyer, O.C.G.A. § 11-2-714, which include personal injury damages, O.C.G.A. § 11-2-715(b).

23.

Mrs. Kilgore is a third party beneficiary of the warranties of merchantability and

fitness for a particular purpose that are described in paragraph 21. O.C.G.A. § 11-2-318.

24.

Under the UCC, Mrs. Kilgore is entitled to recover as consequential damages her loss of consortium.

25.

Any purported limitation of liability of consequential damages for injury to the person is per se unconscionable, and is unenforceable. O.C.G.A. § 11-2-719(3).

WHEREFORE Greg and Hope Kilgore, having stated their Complaint against the defendant, prays as follows:

(a) That summons be issued requiring defendants to appear in this Court within the time provided by law to answer this *Complaint*;

(b) That the case be tried by a fair and impartial jury of twelve;

(c) That plaintiffs recover from defendant for the injuries and damages suffered by plaintiffs in an amount in excess of $500,000.00 as determined in the enlightened conscience of a fair and impartial jury;

(d) That judgment be entered for plaintiffs to include their costs; and,

(e) that they be awarded such other and further relief as this Court deems just and proper.

–7–

**JURY TRIAL DEMANDED**

This 7th day of January, 2014.

    /s/ Craig N. Cowart
**CRAIG N. COWART**
State Bar No. 191280
Attorneys for Plaintiffs

OF COUNSEL:
**CRAIG N. COWART, LLC**
P.O. Box 4364
Macon, Georgia 31208-4364
(478) 957-5000