IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| GREG KILGORE and HOPE KILGORE, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:14-CV-7 (MTT) |
| | ) |
| ACADEMY LTD., | ) |
| | ) |
| Defendant. | ) |
| | ) |

**ORDER**

Although the Court dismissed this case on October 17, 2014, the Court retained jurisdiction for the determination of whether Defendant Academy Ltd. should be sanctioned. After careful review, the Court enters this Order.

Plaintiffs Greg and Hope Kilgore filed a complaint against Defendant Academy Ltd. in this Court on January 7, 2014, asserting claims based on the alleged malfunction of a "Game Winner Climbing Stick" purchased from one of the Defendant's stores. (Doc. 1). On July 2, 2014, the Court Ordered the Plaintiffs to show cause why their complaint should not be dismissed for lack of subject matter jurisdiction because, though the Plaintiffs alleged the basis for the Court's jurisdiction was diversity of citizenship, they did not properly plead Academy's citizenship. (Doc. 17). Specifically, the Plaintiffs alleged Academy was a limited partnership and that both its general and limited partners were limited liability companies[1] but did not allege the citizenship of each member of the LLCs as required to show diversity.

---

[1] The Plaintiffs actually alleged Academy's limited partner was a limited liability *corporation,* which the Court interpreted to mean limited liability company. (Docs. 1, ¶ 1; 17).

In response to the Court's Order, the Plaintiffs moved to dismiss their complaint on September 16 pursuant to Fed. R. Civ. P. 41(a)(2). (Doc. 21). The Plaintiffs explained that they had propounded interrogatories in an attempt to discover Academy's ownership structure and respond to the Court's Order, but they received answers that were clearly unresponsive:

**INTERROGATORY NO. 1**

Please identify the members of Academy Managing Co., LLC. Also identify each such member[']s citizenship by identifying: (1) any individual member's state of citizenship and residence; (2) any corporate member's state of incorporation and principal place of business; (3) any LLC member's members; and (4) any partnership member's partners.

**RESPONSE:**

Defendant is a Texas limited partnership. The sole limited partner of Defendant is Associated Investors, L.L.C., a Texas limited liability company, and the sole general partner of Defendant is Academy Managing Co., L.L.C., a Texas limited liability company, neither of which is publicly traded. Each of Associated Investors, L.L.C. and Academy Managing Co., L.L.C. is indirectly controlled by an affiliate of Kohlberg Kravis Roberts & Co. L.P. (NYSE: KKR), which is publicly traded.

Defendant's subsidiaries include Academy Finance Corporation, a Delaware corporation, Academy.com, LLC, a Texas limited liability company, Academy Administrative Services LLC, a Virginia limited liability company, Brazos Sports Retail Management, LLC, a Delaware limited liability company, and Academy International Limited, a Hong Kong limited liability company.[2]

---

[2] In the hearing held on October 15, Academy's general counsel explained this answer as follows:

When it got around to responding to the interrogatories, [Milton Karfis (the attorney of record for Academy)] believed and thought that they both agreed that the case would just go back to state court because Academy couldn't help him establish diversity jurisdiction, and so [Karfis] simply took our corporate disclosure statement and popped it into the interrogatory response, thinking that that just simply showed all that Academy knew and that plaintiff in his motion to dismiss would take that and say, hey, look, Academy can't show diversity, therefore we need to go back to state court. So he wasn't intending to mislead. He put truthful information, he just wasn't as complete as he should have been.

(Doc. 32 at 4:23-5:10).

(Doc. 21 at 5-6). Because the statute of limitations was about to run, the Plaintiffs' counsel was understandably concerned about being able to timely file the action in state court if diversity of citizenship was lacking and thus moved to dismiss the case without prejudice.

The Court, however, was not willing to let Academy's apparent nose-thumbing pass so easily. On September 17, the Court ordered Academy to submit the information the Plaintiffs requested in their interrogatories within seven days, citing *Bouvier v. Academy Ltd.*, 2:13-cv-3002 (E.D. La.), a case Academy removed to federal court on the basis of diversity jurisdiction. (Doc. 22). Academy requested a telephone conference, which was held on September 24. During the conference, Milton Karfis, then the attorney for Academy, informed the Court that Academy does not have access to its entire ownership structure due to the confidential nature of its private equity ownership. Karfis said the best Academy could do—and what it did in this case—was ask the four primary companies that own Academy whether any of their members are citizens of Georgia. According to Karfis, there was a Georgia corporation with an indirect ownership interest in Academy, and thus, complete diversity did not exist. However, Karfis said he could provide neither the name of the corporation nor the date on which it acquired its ownership interest. Karfis never removed a case to federal court on behalf of Academy, but it was his understanding that if Academy wanted to remove a case it would ask its investment groups whether any of their owners were citizens of the particular state where Academy was trying to remove the case.[3]

---

[3] According to Academy's general counsel, Academy has a policy of not removing cases to federal court due to its inability to establish the citizenship of all its owners. *See infra* p. 9. It is interesting that, despite this alleged no-removal policy, Karfis came away from his discussion with Academy's in-house counsel with the impression that Academy sometimes removes cases.

The Court then ordered Academy to inform the Court by September 26: (1) when the Georgia corporation obtained its ownership interest and (2) the basis for keeping the identity of the corporation secret from the Court.  (Doc. 23).

On September 25, the Court scheduled an evidentiary hearing for October 16, during which Academy would produce witnesses to testify regarding the information the Court requested in its September 17 Order.  (Doc. 24).  The Court informed Academy that in lieu of an evidentiary hearing, it could file the requested information under seal no later than October 3.  *Id.*  On September 26, Academy filed a response under seal.[4]  Academy first acknowledged that its response to the Plaintiffs' interrogatories regarding its ownership structure was "true and correct but not as detailed as it should have been."  (Doc. 25 at 3).  Academy also stated that it explained to the Plaintiffs it could not help them establish diversity because it was partially owned by Allstar LLC, a company controlled by an affiliate of Kohlberg Kravis Roberts & Co. L.P. ("KKR"), which "does not provide Academy with visibility" into its ownership structure.  (Doc. 25 at 4).  Somehow, this visibility problem did not make its way into Academy's interrogatory responses.

The bulk of Academy's September 26 response explained its ownership structure and attached an organizational chart.  According to the chart, Academy is a limited partnership.  Both its general and limited partners are LLCs with the same single member—New Academy Finance Company, LLC.  This LLC's sole member is another

---

Also, as discussed below, examination of cases removed by Academy suggests Karfis was telling the truth.  Academy removed cases based on the bare representation that "[n]one of the members of the foregoing limited liability companies are residents of or have their principal places of business in" the state at issue after giving an incomplete list of its owners.  Or it would identify its owners to a point and then state the identity of the remaining owners or members was "proprietary and confidential" but none were citizens of the state where the action was pending.

[4] Given that the response did not include any of the purportedly confidential information, the Court is unsure why Academy felt the need to file this response under seal.

LLC: New Academy Holding Company LLC.  New Academy Holding Company LLC has four members: MSI 2011 LLC, MG Family Limited Partnership, Allstar Managers LLC, and Allstar LLC.  Academy provided the ownership information for Allstar Managers LLC but claimed it has "limited visibility into the other three members."  However, Academy has previously spoken to the individuals who own MSI 2011 LLC and MG Family Limited Partnership, and they advised Academy that the ownership structures of these two entities include only New York and Texas residents.

Allstar LLC has the majority ownership interest in New Academy Holding Company LLC, and it is controlled by a KKR affiliate.  Since the August 2011 acquisition, KKR has "provided Academy with very limited information about Allstar LLC's organizational structure."  (Doc. 25 at 9).  According to Academy, the basis for keeping investor information confidential is:

> (1) KKR's own confidentiality agreements with, and fiduciary obligations to, Allstar LLC's direct and indirect members/investors, among other reasons, prevents it from sharing this information; (2) the direct and indirect member/investor information for Allstar LLC rests solely with KKR; and (3) Academy has no right to this information and KKR has no duty or obligation to Academy to provide it to Academy.

(Doc. 25 at 9-10).  However, KKR did reveal to Academy that one investor in Allstar LLC's chain of ownership is a Georgia corporation and that this investor obtained its ownership interest on August 3, 2011.

Finally, the September 26 response stated that "Academy's removal in *Bouvier* was erroneous, but unintentional."  Academy claimed "[a]t the time of the *Bouvier* removal [in 2013], the law regarding pleading ownership of limited liability [companies] for jurisdictional purposes was less well-known, and Academy erroneously believed that the citizenship of a limited liability company was the same as a corporation and depended on place of incorporation and principal place of business."  (Doc. 25 at 10).

-5-

That claim of ignorance would be more believable if, in *Bouvier*, Academy had pled its citizenship as a corporation. But the notice of removal in *Bouvier* did not plead the citizenship of the LLCs in Academy's ownership structure simply as if they were corporations (though their states of organization and principal places of business were included). Academy listed the members of each LLC in its ownership structure until it reached New Academy Holding Company, LLC, at which point it asserted, "None of the members of the foregoing limited liability companies are residents of or have their principal places of business in the State of Louisiana."[5]  *Bouvier*, 2:13-cv-3002, at Doc. 1, ¶ 4. Clearly, it seems, Academy was not as ignorant as it claimed; it knew the difference between corporations and LLCs and the significance of that difference to jurisdictional analysis. This is also consistent with Karfis's understanding after talking with in-house counsel that if Academy wanted to remove a case it would find out whether any of the members in its LLC chain of ownership were citizens of the state where Academy was trying to remove the case.

In light of this response, the Court ordered Academy to disclose every lawsuit it filed in federal court or removed to federal court on the basis of diversity jurisdiction since January 1, 2011. (Doc. 27). Academy responded on October 8. (Doc. 28). This response grouped Academy's lawsuits into three categories:

> 1) Cases filed in 2011 while Academy was indirectly but wholly owned by a corporation, and diversity jurisdiction was proper;
>
> 2) Cases removed in ignorance before Academy discovered that the diversity pleading rules for corporations did not apply to limited liability corporations ("LLCs"), in which no one noticed the error, and all of which have been resolved or are being dismissed; and

---

[5] According to Academy's October 29 supplemental response, one law firm that handled many of Academy's cases during this time also represented KKR and thus knew more about KKR's chain of ownership than Academy did. Based on this information, the law firm believed there were no Louisiana citizens in Academy's chain of ownership. (Doc. 35 at 4).

> 3) Cases during the time period after Academy discovered that the diversity pleading rules for corporations do not apply to LLCs and it could not prove diversity of citizenship—in which, to Academy's knowledge, Academy's counsel have never invoked the diversity jurisdiction of the federal courts.

(Doc. 28 at 1-2).

Prior to August 2011 when its ownership structure chained, Academy claimed not to have removed cases to federal court where there was not complete diversity. Academy asserted that after the August 2011 acquisition "some outside counsel continued to remove cases by applying the standards for corporations to the LLCs in Academy's chain of ownership, even though they properly disclosed Academy's LLC-based structure and the KKR-affiliated investment funds in their Corporate Disclosure Statements." (Doc. 28 at 3).  Academy claimed it first learned the pleading rule for LLCs in August 2013 when the Middle District of Louisiana ordered Academy to amend its notice of removal in *Wise v. Academy, Ltd.* to properly allege the citizenship of the LLCs in its chain of ownership.  3:13-cv-569 (M.D. La.), at Doc. 3.  The court cited *Harvey v. Grey Wolf Drilling Co.*, a 2008 Fifth Circuit case that clearly sets forth the citizenship pleading requirements for LLCs.  542 F.3d 1077, 1080 (5th Cir. 2008).

According to Academy, it has not invoked diversity jurisdiction since its "discovery" in August or September 2013 of the pleading rules for LLCs and its inability to discern the citizenship of all its owners.  The one exception is a product liability case in which Sketchers, the manufacturer contractually obligated to defend Academy, removed the case to federal court.  *Kelley v. Sketchers*, 2:14-cv-123 (M.D. Ala.); *In re Sketchers Toning Shoe Prods. Liab. Litig.*, 3:11-md-2308 (W.D. Ky.).  Academy said it has informed Sketchers "that it mistakenly described Academy's citizenship." (Doc. 28 at 8).  The only other pending case in which Academy incorrectly invoked diversity

jurisdiction is *Cleland v. Academy, Ltd. d/b/a Academy Sports & Outdoors*, No. 13-60838, which was then on appeal in the Fifth Circuit after Academy prevailed in the district court.[6]

*Wise* was not the epiphany Academy claims it was. A look at the dockets in other lawsuits disclosed by Academy shows that courts have pointed out the LLC pleading requirements to Academy prior to the *Wise* case. In *Loland v. Academy Ltd.*, Academy was ordered via a text-only entry dated October 11, 2011, to "file documentation necessary for the court to determine the citizenship of every one of the members of the limited liability companies and limited liability partnerships within 10 days in order for the court to ascertain that diversity jurisdiction exists." 6:11-cv-236 (W.D. La.). The *Harvey* case from 2008 was cited in this order. Though *Loland* was removed before Academy's August 2011 ownership change, Academy was still put on notice of the correct pleading standard for LLCs.

Academy was again reminded of the pleading requirements for LLCs in another case it removed after its ownership change, *Armstrong v. Academy, Ltd.*, 3:12-cv-741 (M.D. La.). On April 16, 2013, the defendants, including Academy, were ordered to file an amended notice of removal because they did not name the members of New Academy Holding Company, LLC in their original notice. *Id.* at Doc. 8. Again, *Harvey* was cited. On May 10, 2013, the defendants filed a response consenting to have the

---

[6] Academy filed a notice in the Fifth Circuit on October 7 informing the court that subject matter jurisdiction was lacking. (Doc. 30-1). After this Court's hearing on October 15, Academy supplemented its notice in *Cleland* to further explain what prompted Academy to file the notice in the first place and why it did not discover the problem sooner. (Doc. 35-1). The Fifth Circuit vacated the district court's order and remanded the case with instructions for the district court to remand the case to Mississippi state court and determine whether Cleland is entitled to attorneys' fees. *Cleland v. Academy, Ltd. d/b/a Academy Sports & Outdoors*, No. 13-60838, (5th Cir. Jan. 15, 2015). Academy then reached a settlement with the plaintiff to pay the attorneys' fees, and the district court closed the case on February 3, 2015. *Cleland v. Academy Sports and Outdoors, et al.*, 2:13-cv-9 (S.D. Miss.), at Doc. 41.

case remanded to state court because of settlement discussions but nevertheless "asserting that there is complete diversity of citizenship." *Id.* at Doc. 9. The magistrate judge recommended remanding the case on June 21, 2013. *Id.* at Doc. 10. That recommendation was not ruled on, but the court did grant a subsequent joint motion to remand on August 21, 2013.[7] *Id.* at Docs. 14; 15.

After Academy filed its October 8, 2014 response in the present case, the Court held a hearing on October 15.[8] Academy's general counsel and executive vice president Wade Turner was present for the hearing, but Karfis, who handled the case for Academy up until this point, was absent. During the hearing, Turner reiterated that Academy did not know the pleading rule for LLCs until the *Wise* case and further stated that Academy's policy is—and has been since September 2013—not to remove cases to federal court on the basis of diversity because it cannot establish diversity of citizenship. The Court pointed out and Turner acknowledged that courts had informed Academy about the LLC pleading requirement prior to *Wise*. But Turner explained that Academy's outside counsel handled those cases and that Academy did not know about the courts' orders at the time. Outside counsel got information about Academy's ownership from charts Academy provided each time its structure changed.

---

[7] The court in *Wise* noted that Academy had previously been put on notice of the pleading rule for LLCs when the court denied Academy's motion for an extension of time to amend its notice of removal. *Wise*, 3:13-cv-569, at Doc. 6 ("Defendant should know its own organizational structure, and its attorneys should know what information is required to sufficiently allege the defendant's citizenship.").

[8] The hearing was rescheduled from its original October 16 date.

Turner also claimed Academy told its outside counsel in September 2013 not to remove any more cases and to check their dockets for any pending cases.[9] *Cleland*, the case currently on appeal in the Fifth Circuit, did not show up in Academy's internal screening process. According to Turner, *Cleland* managed to slip through because there was a final order of dismissal in the district court that had not yet been appealed.

The present case also managed to slip through the cracks. Turner explained that Karfis is a specialist called in for tree stand cases. Thus, he did not get the notice sent to outside counsel about Academy's inability to be in federal court on the basis of diversity. Turner also acknowledged that this issue could have been resolved much sooner if Academy had pointed out the deficiency of the Plaintiffs' jurisdictional allegations in its answer. However, he also disclosed that Academy offered and the Plaintiffs accepted payment of attorneys' fees for having to litigate the jurisdictional issue.

## **DISCUSSION**

For reasons that may or may not be grounded in reality, corporate defendants believe they generally fare better in federal court. This is particularly true with regard to corporate defendants defending tort claims and it is almost universally true for defendants with large retail operations. It is only necessary to search Pacer for Wal-Mart to confirm this. As Academy's counsel here repeatedly said, he wants and likes to be in federal court when defending companies like Academy.

---

[9] Specifically, Academy "put out a mandate to all of our outside counsel to, one, not remove any more cases on diversity grounds … and … two, … review all [their] pending cases and make sure that we don't any jurisdictional problems that exist." (Doc. 32 at 8:17-23). The Court assumed that this mandate was in writing and at the conclusion of the hearing asked Academy to produce all such notices it sent to outside counsel. Some notices were subsequently provided but not this one. When the Court inquired, Academy responded that the mandate was oral, not written. (Doc. 43).

In the Court's experience, there are several reasons defendants believe the ability to remove to federal court is an effective weapon. There seems to be a belief among many civil defense attorneys that plaintiffs' attorneys would rather not be in federal court. In many districts, federal juries are thought to be more financially conservative, particularly where, as in this District, jurors are summoned from well beyond the county in which the Court sits. Thus, a case removed from Bibb Superior Court would be heard by jurors drawn from the 21, mostly rural, counties that make up the Macon Division of this Court other than more urban Bibb County. Many civil defense attorneys seem to believe that they stand a better chance of securing summary judgment in federal court than in state court.[10] It has also been argued that plaintiffs' lawyers prefer state court, at least in the states this judge is familiar with, because of the demise of lawyer voir dire in federal court.

But whatever the reason corporate defendants yearn to be in federal court, the parties often engage in fierce skirmishing to get into or out of federal court. A savvy plaintiff's lawyer may sue a store employee when he brings a premises liability claim against a retailer in an effort to destroy diversity jurisdiction. Defendants often counter with claims of fraudulent joinder. Sometimes plaintiffs' lawyers carefully draft their complaints to avoid any appearance that they seek more than $75,000 in damages. Some plaintiffs' lawyers are so desperate to stay out of federal court that, after removal,

---

[10] For a critique of the overuse of summary judgment in federal courts, see Judge Bill Young's stinging opinion in *United States v. Massachusetts*, 781 F. Supp. 2d 1 (D. Mass. 2011). This also brings to mind the observation that a sure way to address the "problem" would be to reduce the number of law clerks allowed federal judges.

they will stipulate that their clients seek and will accept no more than $75,000, and then the parties consent to remand.[11]

In short, the ability to remove is seen as a valuable right that is worth fighting for. Given that, it is difficult to believe that Academy was nearly as ignorant of the law as it claimed to be. Indeed, as discussed above, its claim of ignorance directly conflicts with its pleadings to establish diversity jurisdiction. Also, the Court was particularly unimpressed with Academy's efforts to blame its outside counsel. It makes no difference who perpetrates a fraud; Academy is responsible for it. The Court doubts seriously that, if the tables were somehow turned, Academy would accept the argument that it was all the lawyers' fault. Giving Academy every possible benefit of the doubt, it is apparent to the Court that Academy, at the very least, turned a blind eye to outside counsel's improper removal efforts.

Thus, the Court is satisfied that sanctions would be justified. No doubt in an effort to head off sanctions, Academy appropriately agreed to pay the Plaintiffs' expenses in this case. The Court also notes that the Fifth Circuit recently taxed the costs of appeal against Academy and directed the district court on remand to assess whether Academy is responsible for attorney's fees in *Cleland*, No. 13-60838 (5th Cir. Jan. 15, 2015). Because it appears that the Plaintiffs aggrieved by Academy's conduct will be compensated,[12] the Court does not believe that it would be appropriate for this Court to assess additional monetary penalties.

---

[11] This is a tactic that Academy used. In *Tipton v. Academy, Ltd.*, it improperly removed a case to federal court and the plaintiff moved to remand, filing an affidavit stating she would seek no more than $75,000. 2:12-cv-12 (N.D. Ala.), at Doc. 8.

[12] There is one glaring exception to this. In *McElwain v. Academy.com, LLC d/b/a Academy Sports*, Academy improperly removed the case and then secured a defense verdict. 1:12-cv-52

Another potential sanction would be to order Academy to engage in some educational activity. An example of this is found in *The Security National Bank of Sioux City, Iowa v. Abbott Laboratories*, 2014 WL 3704277 (N.D. Iowa) (sanctioning counsel who engaged in obstructionist tactics during depositions by requiring counsel to "write and produce a training video in which [c]ounsel, or another partner in [c]ounsel's firm, appears and explains … and provides specific steps lawyers must take to comply with [this opinion's] rationale in future depositions in any federal and state court."). Thus, for example, the Court could order Academy to prepare a continuing legal education presentation for corporate counsel. But although the Court considers Academy's conduct egregious, it does not believe that it rises to a level that requires the sort of public embarrassment ordered in *Security National Bank of Sioux City, Iowa*.

In the end, the Court decides to leave this matter where it is. This opinion will be published and knowledge of Academy's transgressions will be bare for all who believe they may be relevant in other cases.

The clerk is directed to close this matter.

**SO ORDERED,** this 9th day of February, 2015.

S/ Marc T. Treadwell<br>
MARC T. TREADWELL, JUDGE<br>
UNITED STATES DISTRICT COURT

---

(S.D. Miss.), at Doc. 43. Academy's response is essentially "too bad," a judgment is a judgment.